# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF PENNSYLVANIA

RENE SAELER,                        )
                                    )
      Plaintiff,             )
                                    )
vs.                                 )   2:10cv201
                                    )   **Electronic Filing**
EAT 'N PARK HOSPITALITY             )
GROUP, INC.,                        )
                                    )
      Defendant.             )

**MEMORANDUM OPINION**

December 14, 2011

## I. INTRODUCTION

Plaintiff, Rene Saeler ("Saeler" or "Plaintiff"), filed an Amended Complaint alleging violations of her rights under Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. § 2000e *et seq.*, the Age Discrimination in Employment Act (the "ADEA"), 29 U.S.C. § 621 *et seq.*, and the Pennsylvania Human Relations Act (the "PHRA"), 43 PA. CONS. STAT. ANN. § 951 *et seq.*, by Defendant, Eat'n Park Hospitality Group, Inc. ("ENP" or "Defendant"). ENP has filed a motion for summary judgment, Saeler has responded and the matter is now before the Court.

## II. STATEMENT OF THE CASE

Saeler is currently forty-eight (48) years old and has been employed as a server for the Eat'n Park Restaurant located in the Clearview Mall ("Clearview ENP") in Butler, Pennsylvania since May of 1983. Defendant's Statement of Material Facts ("Def. SMF") ¶¶ 5 & 6. During her employment with ENP, Saeler was subjected to two (2) formal disciplinary actions which form the bases for this lawsuit. Def. SMF ¶ 7.

The first incident occurred on or about February 3, 2008, when Mike Valent ("Valent")[1] entered the Clearview ENP lobby, asked to speak to a manager, and accused Saeler of throwing tomatoes at Dana Powers' ("Powers") car. Def. SMF ¶ 9. When Valent entered the restaurant, Saeler was in in the bakery area adjacent to the lobby. Def. SMF ¶ 16. Saeler testified that she saw Valent through the window of the bakery door and she:

> . . . went out and I was filling the pan of cookies because it was right there at the bakery. . . [Valent] saw me and he just let off that I threw tomatoes at Dana's car and I did all this damage. And I did not.

Saeler Deposition p. 17. When Valent saw Saeler at the cookie tray, Brianne Ray, the ENP manager on duty at that time, had to restrain Valent. Def. SMF ¶ 20. Ray made Valent leave the restaurant. *Id.* Saeler called the police and, when they arrived at the restaurant, she filed a report against Valent. Def. SMF ¶ 21.

After the incident, Jeff Sellers ("Sellers"), the General Manager of the restaurant was directed by Anthony White ("White"), the Director of Employee Relations, to speak to the managers on duty and the employee involved. Def. SMF ¶ 22. Sellers and White then contacted Jim Bann ("Bann"), the District Manager, to discuss the incident. *Id.* It was decided that Saeler would not be terminated, but she was suspended for one (1) week without pay. *Id.*, Plaintiff's Response to Statement of Material Facts ("Pl. RSMF") ¶ 22. In the disciplinary notice Sellers stated: "[Saeler] got into a verbal confrontation in the lobby. Although [Valent] was in the wrong, [Saeler] also violated policy by getting into the mix instead of walking away. . ." Def. SMF ¶ 23.

---

[1] Valent was the boyfriend of another Clearview ENP waitress, Dana Powers, who worked with Saeler. Def. SMF ¶¶ 9, 10 & 13.

Saeler believed that co-workers, Dana Powers ("Powers") and Debi Brown ("Brown"), should have been suspended over the Valent incident because "they told [Valent] to come in and do that." Def. SMF ¶ 29. Saeler also believed that her age was a motivating factor for her suspension "because [Powers is] so much younger." Def. SMF ¶¶ 31 & 32.

Saeler was involved in another incident that led to a suspension in June of 2009. Def. SMF ¶ 65. On June 23, 2009, the manager on duty at the Clearview Mall restaurant, Kimber Large-Campbell ("Kimber"), told Saeler that she was going to hold off "cutting the floor[2]." Def. SMF ¶ 66. Shortly thereafter, Powers announced that they were cutting the floor. *Id.* Saeler and Powers then became involved in a verbal confrontation, and Kimber had to intervene. Def. SMF ¶¶ 66-69. After listening to "both sides" of the story and consulting another manager, Kimber instructed both Saeler and Powers to leave the restaurant. Def. SMF ¶¶ 70 & 72.

Kimber and General Manager Brendon Scheaffer then discussed the incident with White to determine what action was appropriate in response to the Saeler-Powers incident. Def. SMF ¶ 73. Although Saeler was under a written warning of termination as a result of the Valent incident, the decision was made to issue Saeler another warning instead of terminating her employment. *Id.* Saeler was suspended without pay for three (3) days while the incident was investigated and received the following written warning of termination:

> [Saeler] and [] Powers were involved in a verbal conflict on
> 6/23/09 around noon time. The argument was witnessed by several
> team members in pantry area. There was a question raised as to
> how the service floor was cut and an argument followed bringing
> up past personal conflict involving an incident that occurred in
> February 2008. Confrontational behavior disrupts the daily
> operation of the restaurant. It affects other employees and guests.

---

[2] "Cutting the floor" refers to reducing the number of servers working on the restaurant floor. Saeler Depo. pp. 37-38.

Def. SMF ¶ 75. Powers was also suspended without pay for three (3) days without pay while the incident was investigated and received a written warning similar to the warning issued to Saeler but included the following:

> [Powers] made a threatening statement to [Saeler] in the heat of the argument. Although [Powers] apologized this statement of "Kimber if she doesn't stop I'm gonna punch her in the face." (sic). It should not have been said.

Def. SMF ¶ 77.

Saeler contends that her suspensions were the result of a discriminatory animus and/or retaliatory motives by ENP.

### III. LEGAL STANDARD FOR SUMMARY JUDGMENT

Pursuant to FED. R. CIV. P 56(c), summary judgment shall be granted when there are no genuine issues of material fact in dispute and the movant is entitled to judgment as a matter of law. To support denial of summary judgment, an issue of fact in dispute must be both genuine and material, *i.e.*, one upon which a reasonable fact finder could base a verdict for the non-moving party and one which is essential to establishing the claim. *Anderson v. Liberty Lobby*, 477 U.S. 242, 248 (1986). When considering a motion for summary judgment, the court is not permitted to weigh the evidence or to make credibility determinations, but is limited to deciding whether there are any disputed issues and, if there are, whether they are both genuine and material. *Id*. The court's consideration of the facts must be in the light most favorable to the party opposing summary judgment and all reasonable inferences from the facts must be drawn in favor of that party as well. *Whiteland Woods, L.P. v. Township of West Whiteland,* 193 F.3d 177, 180 (3d Cir. 1999), *Tigg Corp. v. Dow Corning Corp.*, 822 F.2d 358, 361 (3d Cir. 1987).

When the moving party has carried its burden under Rule 56(c), its opponent must do more than simply show that there is some metaphysical doubt as to the material facts. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). In the language of the Rule, the nonmoving party must come forward with "specific facts showing that there is a genuine issue for trial." FED. R. CIV. P 56(e). Further, the nonmoving party cannot rely on unsupported assertions, conclusory allegations, or mere suspicions in attempting to survive a summary judgment motion. *Williams v. Borough of W. Chester*, 891 F.2d 458, 460 (3d Cir.1989) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986)). The non-moving party must respond "by pointing to sufficient cognizable evidence to create material issues of fact concerning every element as to which the non-moving party will bear the burden of proof at trial." *Simpson v. Kay Jewelers, Div. Of Sterling, Inc.*, 142 F. 3d 639, 643 n. 3 (3d Cir. 1998), *quoting Fuentes v. Perskie*, 32 F.3d 759, 762 n.1 (3d Cir. 1994).

IV. **DISCUSSION**

Saeler is asserting claims under Title VII and the ADEA, Counts I and II respectfully of the Amended Complaint, for the suspension issued on June 23, 2009. At Count III, Saeler contends that her June 23, 2009, was the result of retaliation for filing an administrative complaint with the Equal Employment Opportunity Commission ("EEOC"). In Counts IV and V of the Amended Complaint, Saeler claims she was subjected to discrimination based upon her age and gender in violation of the PHRA when she was suspended in February of 2008. Saeler has withdrawn her gender discrimination claims under both Title VII and the PHRA, therefore, Counts I, V and VI shall be dismissed with prejudice.

5

A. <u>Age Discrimination – February 2008 and June 2009 Suspensions</u>

The ADEA prohibits employers from discriminating against individuals in hiring, discharge, compensation, term, conditions, or privileges of employment on the basis of their age. See 29 U.S.C. § 623(a)(1). In cases where a plaintiff alleges disparate treatment under the ADEA, liability hinges on whether the plaintiff's age motivated the employer's decision and had a determinative influence on the employment decision. *See Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 141 (2000). A plaintiff can sustain a claim of discrimination under the ADEA by presenting either direct or circumstantial evidence of discrimination. *See Duffy v. Magic Paper Group, Inc.*, 265 F.3d 163, 167 (3d Cir. 2001). Under the ADEA, the parties' burdens in establishing and defending claims by indirect evidence are determined by the procedure set forth in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). *See Stanziale v. Jargowsky*, 200 F.3d 101, 105 (3d Cir. 2000)[3].

Under the *McDonnell Douglas* analysis, Saeler bears the initial burden of establishing a *prima facie* case of discrimination. *Atkinson v. LaFayette College*, 460 F.3d 447, 454 (3d Cir. 2006). The existence of a *prima facie* case of discrimination is a question of law to be decided by the Court. *Sarullo v. U.S. Postal Service*, 352 F.3d 789, 797 (3d Cir. 2003). To establish *a prima facie* case, Saeler must demonstrate that: (1) she belongs to a protected class; (2) she was qualified for the position; (3) she was subject to an adverse employment action; and (4) the adverse employment action occurred "under circumstances that raise an inference of discriminatory action." *Id.* at 798 (citing *McDonnell Douglas Corp. v. Green*, 411 U.S. at 802). Upon such a showing by Saeler, the burden shifts to ENP to produce evidence of a legitimate

---

[3] There is no need to differentiate between Saeler's ADEA and PHRA claims as the same analysis is used for both. *See, e.g., Simpson v. Kay Jewelers*, 142 F.3d 639, 643-44 & n.4 (3d Cir. 1998); *Fairfield Township Volunteer Fire Co. No. 1 v. Commonwealth*, 609 A.2d 804, 805 (Pa. 1992).

nondiscriminatory reason for the adverse decision. *St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 506-507 (1993). Saeler must then demonstrate that ENP's articulated reason was not the actual reason, but rather a pretext for discrimination. *Id.* at 507.

To show pretext, Saeler must point to some evidence from which a fact finder could reasonably either: (1) disbelieve Defendants' articulated legitimate reasons; or (2) believe that an invidious discriminatory reason was more likely than not a motivating or determinative cause of ENP's employment decision. *Fuentes v. Perskie*, 32 F.3d 759, 764 (3d Cir. 1994).

To discredit the proffered reason, however, Saeler cannot simply show that ENP's decisions were wrong or mistaken. The factual dispute at issue is whether ENP was motivated by a discriminatory animus, not whether it was wise, shrewd, prudent, or competent. *See Ezold v. Wolf, Block, Schorr & Solis-Cohen*, 983 F.2d 509, 531, 533 (3d Cir. 1992); *Villanueva v. Wellesley College*, 930 F.2d 124, 131 (1st Cir.), *cert. denied*, 502 U.S. 861 (1991). Instead, Saeler must present evidence demonstrating "such weaknesses, implausibilities, inconsistencies, incoherencies (sic), or contradictions" in ENP's reasoning that one could reasonably conclude such reasons are incredible and unworthy of credence, and ultimately infer that ENP did not act for the asserted nondiscriminatory reasons. *Fuentes v. Perskie*, 32 F.3d at 765; *see also Josey v. John R. Hollingsworth Corp.*, 996 F.2d 632, 638 (3d Cir. 1993)(holding that the proper inquiry is whether the plaintiff has proffered sufficient evidence of "inconsistencies and implausibilities in the employer's proffered reasons").

ENP concedes that Saeler is a member of the protected class based upon her age; that she was qualified for his position as a waitress with ENP; and that she was subject to an adverse employment action, as she was suspended without pay on two (2) occasions. ENP contends, however, that the suspensions did not occur under circumstances giving rise to an inference of discrimination. In order to meet the fourth element of a *prima facie* showing, Saeler need only

produce "evidence adequate to create an inference that an employment decision was based on an illegal discriminatory criterion." *Roach v. Radio Systems Corporation*, 80 F.Supp.2d 530, 532 (W.D. Pa. 1999). The central focus of such inquiry is whether the employer is treating "some people less favorably than others because of their race, color, religion, sex, or national origin." *Pivirotto v. Innovative Sys.*, 191 F.3d 344, 352 (3d Cir. 1999)(citations omitted).

With regard to the 2008 incident, Saeler attempts to justify her actions by arguing that she never left the bakery area during the confrontation in which Valent accused her of throwing tomatoes at Powers' car. The bakery area, however, is adjacent to the lobby, and Saeler's only explanation for why she needed to refill the cookie tray at the exact time Valent entered the lobby to complain about the vandalism to Powers' car, was that she was "curious" and that she "didn't trust Valent." Saeler Depo. p. 17. Such contention does not change the fact that Saeler failed to walk away from the incident, and in fact caused an escalation of the event.

Saeler offers no comparators with regard to an employee getting into a direct confrontation with a customer. Instead she directs the Court to the punishment Powers was given after the June 2009 incident, arguing that Powers was given a three (3) day suspension for the incident, while she was given a seven (7) day suspension for her confrontation with Valent in 2008. Such a comparison is illogical. First, the 2009 incident did not involve a confrontation with a customer, but more importantly Saeler was involved in the 2009 confrontation with Powers, and despite being issued a termination warning in 2008, was given the exact same punishment as Powers, a three (3) day suspension.

Saeler has failed to demonstrate to this Court that her 2008 suspension occurred under circumstances that raise an inference of discrimination. Notwithstanding the Court's finding that Saeler has failed to establish a *prima facie* case of age discrimination under the PHRA, Saeler is clearly unable to show pretext under a *McDonnell Douglas* burden shifting analysis. ENP has

8

articulated of a legitimate nondiscriminatory reason for the adverse employment action: "[Saeler] got into a verbal confrontation in the lobby. Although [Valent] was in the wrong, [Saeler] also violated policy by getting into the mix instead of walking away. . ." *See* Def. SMF ¶ 23.

In support of her contention that ENP's reason for suspending her was a pretext to discrimination, Saeler reiterates her argument in support of her *prima facie* showing. Such argument may create an issue of fact regarding whether ENP's decision to suspend her for seven (7) days was wrong or mistaken. However, such showing is woefully inadequate to demonstrate "such weaknesses, implausibilities, inconsistencies, incoherencies (sic), or contradictions" in ENP's reasoning that a factfinder could reasonably conclude such reasons are incredible and unworthy of credence, and ultimately infer that ENP did not act for nondiscriminatory reasons.

With regard to the June 2009 incident, Saeler was given the same three (3) day suspension and written warning that Powers was given. Saeler's subjective belief that Powers should have received a more substantial punishment because she threatened Saeler is of no moment. At the time of the June 2009 incident, Saeler was under a termination warning. ENP decided not to terminate either Saeler or Powers because they were considered good long-term employees. *See* White Deposition pp. 73, 80. Both Saeler and Powers, therefore, received punishments that were more lenient than ENP could have enforced. Like the 2008 incident, ENP's conduct simply does not raise an inference of discrimination. Saeler has failed to establish a *prima facie* case of age discrimination with regard to her three (3) day suspension following the 2009 incident with Powers.

Assuming Saeler was able to meet the *prima facie* criteria, her cause of action fails nonetheless. ENP has articulated of a legitimate nondiscriminatory reason for the adverse employment action: "[Saeler] and [] Powers were involved in a verbal conflict on 6/23/09 . . . Confrontational behavior disrupts the daily operation of the restaurant. It affects other employees

9

and guests."). Saeler must direct this Court to evidence that ENP's articulated reason was not the actual reason, but rather a pretext for discrimination, and she fails to do so.

Saeler continues to argue that Powers should have been given a more substantial penalty because Powers threatened her, and further contends that ENP had no viable business reason for its giving Powers a different suspension that Saeler received for the 2008 incident. ENP's decision, however, need not make business sense. Saeler must show that ENP's reasoning for suspending her for her role in the 2009 incident with Powers was a pretext for discrimination. There is simply no evidence that would create an issue of fact regarding the credibility of ENP's disciplinary decision. Summary judgment will be granted in favor of ENP on Saeler's ADEA claim regarding the June 2009 incident with Powers.

B. Retaliation Under the PHRA and the ADEA

Following her suspension with regard to the February 2008 incident with Valent, Saeler filed a charge against ENP with the EEOC, alleging she had been suspended without cause because of her gender and age. Def. SMF ¶ 43. The EEOC issued a "no cause" determination with respect to this charge on April 11, 2008. Def. SMF ¶ 44. On May 8, 2008, Saeler filed a second charge with the EEOC repeating the allegation that she had been wrongfully suspended and also alleging she had been retaliated against by other employees with management's knowledge. Def. SMF ¶ 45.

Specifically, Saeler alleged that one of her food orders had been thrown in the garbage in order to make her "look bad." Def. SMF ¶¶ 46 & 47. Saeler had no knowledge of who threw away her order, but it was her belief that ENP management was aware of the incident. Def. SMF ¶¶ 48 & 49. Saeler did not discuss the incident with anyone, and did not complain to ENP about the incident. Def. SMF ¶ 53. Saeler also believed she was a victim of retaliation because a customer, who happened to live in the same town as Powers, complained that Saeler had not

been sufficiently attentive. Def. SMF ¶¶ 55 & 59. Saeler failed to inform anyone at ENP that she believed the customer was a friend or neighbor of Powers. Def. SMF ¶ 61. On July 21, 2008, the EEOC issued a "no cause" determination and right to sue letter with respect to Saeler's charge. Def. SMF ¶ 64.

On July 27, 2009, Saeler filed a third charge with the EEOC alleging discrimination on the basis of age, gender and retaliation. Def. SMF ¶ 85. The complaint resulted from an ENP manager's unflattering comment to Saeler about a Christmas outfit Saeler was wearing in December of 2008. Def. SMF ¶ 87. The EEOC issued a dismissal and notice of rights with regard to this charge on November 27, 2009. Def. SMF ¶ 86.

Saeler contends that she was retaliated against by her coworkers with regard to the above-mentioned incidents, and by ENP in making the decision to suspend her for the 2009 incident with Powers, because she engaged in protected activity with the EEOC. To establish a hostile work environment claim for retaliation, a plaintiff must prove: (1) she suffered intentional discrimination because of her protected activity; (2) the discrimination was severe or pervasive; (3) the discrimination detrimentally affected her; (4) it would have detrimentally affected a reasonable person in like circumstances; and (5) a basis for employer liability is present. *Hamera v. County of Berks*, 248 Fed. Appx. 422, 424 (3d Cir. Pa. 2007)(quoting *Jensen v. Potter*, 435 F.3d 444, 449 (3d Cir. 2006)). An employer may be liable for retaliatory harassment perpetrated by an employee's co-workers only if the *prima facie* case is satisfied and if there is a basis for employer liability for the coworker's conduct. *Jensen v. Potter*, 435 F.3d at 449. "When coworkers are the perpetrators [of the harassment], the plaintiff must prove employer liability using traditional agency principles." *Id.* at 452. There is a basis for liability where supervisors "knew or should have known about the [co-worker] harassment, but failed to take prompt and adequate remedial action" to stop the abuse. *Id.* at 453.

Here, Saeler is unable to show a *prima facie* case of retaliation. Initially, she must direct this Court to evidence that there was a causal connection between her alleged participation in protected activity, and her allegations of co-worker harassment. Saeler has failed to identify any evidence that her missing order ticket or the customer complaint were causally connected to her EEOC complaint against ENP. Further, Saeler directs the Court to two (2) incidents of alleged co-worker harassment. The Supreme Court in *Faragher v. City of Boca Raton*, 524 U.S. 775 (1998), noted that a "recurring point in [harassment] opinions is that 'simple teasing,' offhand comments, and isolated incidents (unless extremely serious) will not amount to discriminatory changes in the 'terms and conditions of employment.'" *Id.* at 788. Saeler's claim does not satisfy the "severe or pervasive" element because the incidents complained of do not rise to the requisite level of harassment that a reasonable jury would find actionable. With regard to employer liability, Saeler admits she did not complain to ENP with regard to her missing order ticket, and never explained her subjective belief that the customer who complained about her was a friend or neighbor of Powers. Therefore, she is also unable to show that ENP had notice or constructive notice of any harassing conduct, and that it failed to take remedial action. Saeler's retaliation claim based upon alleged co-worker harassment fails as a matter of law.

Sealer further contends that ENP retaliated against her for filing charges with the EEOC. To establish a *prima facie* case of unlawful retaliation, a plaintiff must demonstrate that: (1) she engaged in protected activity; (2) the employer took an adverse employment action after or contemporaneous with the protected activity; and (3) a causal link exists between the protected activity and the adverse employment action. *See Moore v. City of Philadelphia*, 461 F.3d 331, 340-341 (3d Cir. 2006), *Weston v. Pennsylvania*, 251 F.3d 420, 430 (3rd Cir. 2001). If the employee establishes this *prima facie* case of retaliation, the familiar *McDonnell Douglas* approach applies in which "the burden shifts to the employer to advance a legitimate, non-

retaliatory reason" for its conduct and, if it does so, "the plaintiff must be able to convince the factfinder both that the employer's proffered explanation was false, and that retaliation was the real reason for the adverse employment action." *Krouse v. Am. Sterilizer Co.*, 126 F.3d 494, 500-01 (3d Cir. 1997). To survive a motion for summary judgment in the employer's favor, a plaintiff must produce some evidence from which a jury could reasonably reach these conclusions. *Fuentes v. Perskie*, 32 F.3d at 764.

Even assuming that Saeler has successfully made out a *prima facie* case on her retaliation claim against ENP — a proposition of which we are doubtful — she has presented no evidence to discredit ENP's legitimate, non-discriminatory and non-retaliatory reason for her June 2009 suspension. ENP's documented reason for suspending Saeler for her the verbal confrontation with Powers has been set forth above. This is plainly a legitimate reason for Saeler's suspension.

This Court is unable to find any evidence in the record that would either cast doubt on the veracity of ENP's proffered reason or suggest that the proffered reason was merely a pretext for discrimination. Accordingly, Saeler's retaliation claims fail as a matter of law.

## V. CONCLUSION

The Court finds that there are no material facts in dispute, Saeler is unable to show that that ENP violated her rights under the ADEA or the PHRA. Accordingly, ENP's motion for summary judgment shall be granted. An appropriate order will follow.

s/ David Stewart Cercone<br>
David Stewart Cercone,<br>
United States District Judge

cc: Neal A. Sanders, Esquire
    Dirk D. Beuth, Esquire
    David R. Johnson, Esquire
    (*Via CM/ECF Electronic Mail*)